SOUTHERN HOME BUILDING AND LOAN ASSOCIATION v. J. R. THOMSON.

Decided June 16, 1900.

**1.  Loan Association—Taking Stock as Device to Cover Usury—Charge.**

Plaintiff, wishing to borrow money, applied to a building and loan company and was informed that in order to do so he must subscribe for certain shares of stock, which he did, informing the company's agents that he did so only to obtain the loan. Held, in an action to cancel the loan debt for usury, that evidence of the facts stated warranted the court in submitting to the jury the question as to whether plaintiff was a bona fide stockholder, or his subscription merely a device to evade the usury law .

**2.  Usury—Constitutional Law—Legislature Prescribing Penalty.**

Where, at the time a usurious contract was made, usury was prohibited by the Constitution, the Legislature had the right, without impairing the obligation of contracts, to affix such penalty as it saw proper to the collection and receipt, after the passage of the legislative acts, of usurious interest accruing under the contract.

**3.  Voluntary Payment of Taxes.**

A loan company, under the terms of the loan contract, paid certain taxes on property mortgaged to it for security at a time when, by virtue of a subsequent judicial application to the principal debt of certain usurious payments of interest theretofore made, the loan was satisfied, and the lien on the property discharged. Held, that in making such payment the company was a mere volunteer, and could not recover therefor.

APPEAL from Parker. Tried below before Hon. J. W. PATTERSON.

*Bidwell & Stennis,* and *Pruitt & Smith,* for appellant.

*Alexander & Fain,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—The nature of this suit is well stated in appellee's brief, and is as follows:

"Thomson filed this suit on January 31, 1899, against appellant, to remove cloud from title as stated in appellant's brief, and for cancellation of debt, claimed by appellant against him, for application of payments to discharge all debt, charging the bond or note contract to be usurious, alleging payment of $1225, the amount borrowed being $1000, and seeking to recover $450 as statutory penalty, being double the amount of usurious interest paid in excess of principal debt. Thomson alleged, in substance, that he was desirous of borrowing money from defendant, and that defendant represented that it would loan him money at 6 per cent per annum, but that in order to procure a loan it would be necessary for him to subscribe for certain shares of stock in defendant association, and that for the purpose of borrowing money plaintiff subscribed for ten shares of said stock, applied for a loan, and that on February 9, 1891, defendant loaned plaintiff the sum of $1000 and he executed a written bond or note for the sum of $2000, conditioned for the payment of $16 per month, $6 of which was named in said instrument as stock dues, $5 as premium, and $5 as interest, and that while only $5 was named as interest in said contract, all of said monthly payments were interest payments, and were used as a device by defendant for the purpose of evading the usury laws of Texas; that the contract required the payment of said $16 per month and all fines for the use of the $1000, which was about 20 per cent per annum. He alleged the execution of the trust deed on certain real estate, with the bond, as part thereof, and as a part of the same transaction, whereby defendant could declare the debt due after three months' failure to pay said monthly sums; alleged the payment of the $1225 in monthly installments under the usurious contract; and also alleged that defendant agreed by its agent to loan him money at 6 per cent and that stock payments should be applied as paid in each month as a payment on the principal of his debt.

"Appellant answered by general denial, and set up the statute of two years' limitation in bar of recovery of usurious interest. By way of cross-bill appellant alleged the subscription for the stock, the loan of $1000, execution of the $2000 bond, the trust deed, declared the whole amount due, and sought to recover of plaintiff the $1000 principal,—$125 premium, $125 interest, $84.08 taxes alleged to have been paid by it on February 28, 1899, and 25 per cent of the entire amount as attorney's fees, and asked for foreclosure of its lien for all of said amounts. It also plead different provisions of the by-laws of the association."

The case was tried by a jury, and judgment was rendered for the plaintiff, and the defendant company has appealed.

There was competent evidence tending to establish all the material allegations in plaintiff's petition, and that the $84.08 taxes paid by the defendant company was paid after the debt, if the contract was usurious, had been extinguished, and of course the lien discharged, thereby rendering the payment voluntary.

Several assignments of error complain in various forms of the court's charge in submitting to the jury the issue of usury, or more correctly speaking the question as to whether the stock subscription of $6 per month was intended by both parties as a bona fide subscription for the stock of the association, or was merely a subterfuge or device by and through which the usury laws of the State could be evaded and usurious interest collected.

At the time the loan was made our Constitution allowed a conventional rate of 12 per cent per annum, and provided that contracts for more than that rate should be void as to all interest and valid only for the principal sum, and after this contract was made our Legislature provided that "if usurious interest is *hereafter received or collected*," the party paying it might recover by an action of debt double the amount of interest so paid. Const. of Texas, Amendment of 1891, art. 16, sec. 11; Rev. Stats., art. 3106; Smith v. Chilton, 90 Texas, 447, 39 S. W. Rep., 287.

That part of the charge of the court complained of is as follows: "On the question of usury you are charged that if from the evidence herein you find and believe that it was the agreement or understanding between the plaintiff Thomson and the association, at the time he took the stock, that plaintiff was not in fact to become a stockholder in the association, but was simply to borrow money of the association, then you are charged, if you so find the facts to be, that the contract would be usurious, and all the payments made as interest, premiums, and stock dues would be applied to the payment of the prinicpal sum of $1000, and the association would not be entitled to any interest. But in this connection you are charged that to make the contract usurious both the plaintiff Thomson and the association must have understood and intended at the time the stock was subscribed for that Thomson was not in reality to become a stockholder in the association, but that his only purpose in taking the stock was to enable him to borrow money of the association. The mere fact (if it is a fact) that the only purpose of the plaintiff Thomson in subscribing for the stock was to enable him to borrow money, would not make the contract sued upon usurious, but to have that effect the association, through some authorized agent, must have also understood and intended that the plaintiff Thomson was not in reality to become a stockholder in the association, but that he was only to borrow money from such association.

"6. The purchase by the plaintiff of shares of stock in the defendant company would make him a stockholder in and member of such associa-

tion, and liable for all dues, fines, and assessments under its by-laws, unless you find and believe from the evidence that it was the agreement or understanding between the plaintiff and the association that the stock was subscribed for and issued for the sole purpose of enabling the plaintiff to borrow money of the association. The burden is upon the plaintiff to establish this by a preponderance of the evidence."

The evidence tended to establish that the association was organized for the purpose of lending money for a profit. Its scheme contemplated two classes of customers or members. All were required to subscribe for its stock, and all stockholders were to receive the same profits·or dividends per share on their stock. One class of stockholders was composed of those who became members solely for the purpose of borrowing its money, while the other class were those who subscribed and paid on their stock as an investment only, though they had the same right to borrow from the association as the other members. The evidence clearly establishes that Thomson desired only a loan from the association, and being informed by its agent that he must take stock in order to obtain the loan, agreed to subscribe therefor only for the purpose of obtaining the amount of money from the association which he needed and desired. At the time he subscribed for the stock he told the local secretary of the company at Weatherford, and the traveling agent of the company who was there organizing the local company and who had promised to loan him money if he would take stock, that he would take the stock, but only for the purpose of getting the loan. This traveling agent told him that stock payments would be applied on principal and interest. Besides, in the opinion of the writer, the jury were warranted in viewing this stock scheme of the association as one adopted in the first instance as a device for evading the usury laws of the States and collecting usurious interest, as it does not very clearly appear that such a feature fits any other place in its financial economy, so far as the borrowing class is concerned. Considering the effect of such a scheme on the borrowing class, and the profits thereby made by the investing class of its members, the inference that such effect was intended by the association is, in the opinion of the writer, perfectly legitimate, and furnished evidence enough in itself to warrant the court in submitting the issue to the jury. All the assignments, therefore, questioning the sufficiency of the evidence to warrant the court in charging on this issue are overruled.

There is no merit in·the contention that the penalty can not be recovered because the statute allowing it was enacted after the usurious contract was made, for it was unlawful under the Constitution to make a usurious contract, and the Legislature had the right and power to affix such penalty to prevent such contracts as it saw proper, and the usury was collected and received after the passage of the act. Hemphill v. Watson, 60 Texas, 679 ; Law v. People, 87 Ill., 385.

The appellant can not recover from the appellee the $84.08 paid out for taxes on the property mortgaged to secure the bond, because the payment was voluntary, and at the time it was paid the principal of the debt,

as well as the mortgage, had been extinguished by the monthly payments, and, the contract being usurious, no interest was due.

We find no error in the judgment, and it is affirmed.

*Affirmed.*