M. H. WALTER AND WIFE v. MUTUAL HOME SAVINGS ASSOCIATION.

Decided May 3, 1902.

**1.—Usury—Loan Association—Contract.**

Evidence held to require the submission of the issue whether the stock subscription and payments of fines and on stock under a contract with a loan company were mere devices to avoid the usury laws.

**2.—Same—Cancellation.**

The rule that cancellation will be granted only upon payment of the debt, with interest at the highest rate allowed by law, is held not applicable to a case of this character.

Appeal from Tarrant. Tried below before Hon, M. E. Smith.

*Q. T. Moreland, Theodore Mack,* and *Capps & Canty,* for appellants.

*W. S. Essex* and *W. D. Harris,* for appellee.

CONNER, ASSOCIATE JUSTICE.—This appeal is from a judgment in favor of the appellee association for $1016.56, with interest and attorney's fees, and ordering the sale of lots 1 and 2 in block 8, A. & V. addition to the city of Fort Worth, upon which a trust deed lien was foreclosed. This judgment is in accord with a peremptory instruction of the court, which we have concluded is erroneous as assigned.

The suit was instituted by appellants January 31, 1901, to cancel the loan obligation and lien upon which the judgment was rendered, and thus to clear the title to said lots. It was alleged in their petition, and proven on the trial, that on February 18, 1896, appellants for money

then borrowed executed and delivered to appellee the following loan obligation:

"($1300.00)        .        "FORT WORTH, Texas, February 18, 1896.

"Received, as a loan from the Mutual Home and Savings Association of Fort Worth, Texas, the sum of thirteen hundred and no-100 dollars ($1300.00) which sum we agree to repay to said association at Fort Worth, Texas, with interest at the rate of 10 per cent per annum from the date money is advanced, payable weekly on Saturday of each week, as follows:

"We hereby subscribe for thirteen (13) shares of stock in .the said association, of one hundred dollars each, book No. 1062, and we agree to pay to said association weekly the sum of thirty-five cents per share on said stock which sum is to be applied as follows:

"First—To the payment of any fines, insurance, taxes, or other assessments made against us in accordance with the by-laws of said association.

"Second—To pay the interest on said loan.

"Third—The balance of said amount to be applied towards the payment of our said stock subscription. Said weekly payments shall be continued until said stock is fully paid up by the payments applied thereto as above stated, and the dividends declared thereon.

"We also assign the stock aforesaid to association as collateral security for said loan, and we authorize it, when said stock is fully paid up, or should we fail for twelve weeks to make the payment above stated, at its option to withdraw said stock or any or all of the money paid thereon at its withdrawal value, as provided for withdrawals under the by-laws by said association, and apply the amount withdrawn to the payment: First, of any fines, insurance, taxes, or other assessments; second, any interest due on said loan; and third, to the payment of said loan.

"Should any part of this loan, or interest thereon, or any other charges incident to said loan remain unpaid after the withdrawal value of said stock is applied, they shall become due and payable at the option of said association, and said association may then proceed to collect the sum so remaining unpaid by suit or by sale of land or other security under deed of trust made to secure the payment of said sum; and in case of the institution of suit on this obligation, or the collection of any sum hereon, through the probate court or by sale under said deed of trust, then we promise to pay cost of collection, including 10 per cent on the sum due as attorney's fees.

"Witness our hands at Fort Worth, Texas, this the 15th day of February, 1896.

"M. H. WALTER,
"MRS. M. E. WALTER."

Indorsed on back: "Cr. Jany. 21st, 1901, by stock withdrawn, $320.18."

To secure the payment of this obligation appellants also made the lien foreclosed by the court. Prior to the institution of the suit appellants had paid upon said obligation sums aggregating $902.14, and they tendered into court the sum of $366.81 as the balance claimed by them to be due, alleging the loan contract to be usurious, and the material question submitted for our determination is whether the evidence of the alleged usury is such as required the submission of the issue to the jury. As before indicated, we think it is. We do not feel called upon by the assignments to determine whether the loan contract is usurious on its face, and hence we have omitted the statement of by-laws and other details that otherwise would perhaps be material; but appellant M. H. Walter testified, in substance, that the officer of the appellee association to whom he made his application for a loan informed him at the time that to secure the loan it would be necessary for him to take stock in the association, and that he subscribed therefor with this sole end in view, said officer assuring him at the time that of the weekly payments provided for in the written contract part would be applied in payment of interest and the remainder in payment of the principal; that with such understanding and purpose the loan contract was executed. It will be observed that the written obligation requires the weekly payment of 35 cents on each of thirteen shares of stock, or a total of $4.55 per week. No stock was in fact issued, and computing the interest on $1300 at the rate specified in the contract for one week and applying the $4.55 in accordance with the contract as detailed by M. H. Walter, the interest for the week would thereby be liquidated and leave a balance of $2.05 to be applied to the principal, thus to that extent reducing the amount upon which interest should be computed for the week following. Should this process be continued it is apparent that the interest would be payable in small but constantly diminishing sums, and that in like small but constantly increasing sums would the weekly payments liquidate the principal. As provided in the written contract, however, the weekly payments, after discharging fines, interest, etc., were to be applied in payment of stock until such stock became fully paid up, at which time, in accordance with the by-laws of the association, the stock was to be applied in payment of the principal debt, thus enabling the association during the long term of the obligation provided for to receive the level rate of an annual interest of 10 per cent on the full amount of the loan, and at the same time, without recompense to appellants, retain during the same period constantly increasing sums that by appellants' testimony should have been at once applied in diminution of the interest and principal of his debt. We will not incumber this opinion with the calculation, but think it sufficient to say that in any phase of the contract as insisted upon by the appellee association appreciably more money will be required of the borrower to discharge it than would be required of him were the contract in fact as indicated by Walter's testimony. We therefore conclude that it should have been submitted to the jury to say from the evidence whether, as alleged, the stock subscription, the pay-

ments of fines and on stock provided for, were mere devices for the purpose of enabling the association to avoid our usury law. Peightal v. Building Assn., 25 Texas Civ. App., 390; Association v. Goforth, 57 S. W. Rep., 700.

It is insisted that inasmuch as the by-laws of the association provided for an apparently equitable apportionment of the profits of the business among the stockholders, and also provided that a stockholder could at any time pay off the principal indebtedness or apply thereon such number of shares held by him as had become fully paid up by the total payments theretofore made, that the court properly construed the contract as untained with usury, and hence by the peremptory instruction to the jury properly disposed of the rights of the parties in accordance with its terms. It may be that if called upon to determine the character of the contract as it appears on the face of the proceedings that the features mentioned and other provisions of the written contract, trust deed, and by-laws should be given the effect insisted upon, but this is not the question now before us. Among others, the pleadings and evidence of appellants distinctly presented the issue of whether the written proceedings embodied the real contract or whether such proceedings were in fact but formalities and usury evading devices, and appellants had the right to have such issue determined by the jury.

We are not inclined to indulge as applicable herein the contention that inasmuch as appellants' action involved the equitable one of cancellation that they will in any event be required to pay the debt and interest thereon at the highest rate permitted by the law at the time of the loan; and the judgment will therefore be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

ON MOTION FOR REHEARING.

We think counsel for appellee misconstrue our original opinion. We held merely that the evidence was such as to require the submission of the issue of usury to the jury. The testimony of Walters was important mainly or altogether as tending to raise this issue. If the transaction was a loan merely and the contract executed was but a device whereby a greater rate of interest than is allowed by law might be collected, then the contract was usurious, the calculation indicated in the opinion being but our reasoning to show that under the written contract a greater amount would be required to liquidate appellant's debt than would be required if the transaction was but a loan with interest thereon at the rate of 10 per cent per annum. If the contract was in fact usurious no interest can be collected, and it hence follows that the computation furnished by appellee of the amount due on the partial payment plan at the date of trial affords us no aid, that not being the true issue.

The motion for rehearing is overruled.

*Overruled.*