COTTON STATES BUILDING ASSOCIATION v. J. J. B. RAWLINS.

Decided November 17, 1902.

**1.—Usury—Parol Evidence—Written Contract.**

Although a written contract as executed does not show on its face to be usurious, it is always proper, when it is attacked for that reason, to show by parol evidence the real nature of the contract, in order to determine its usurious character.

**2.—Same—Building and Loan Association Contract.**

Evidence held to show that a contract of loan made by and with a building and loan association was but a scheme and device whereby a greater rate of interest could be charged than permitted by law.

Appeal from the District Court of Ellis County. Tried below before Hon. A. A. Kimble, Special Judge.

*Moore, Park & Birmingham,* for appellant.

*T. N. Collier* and *Templeton & Harding,* for appellee.

RAINEY, CHIEF JUSTICE.—On August 13, 1902, appellees executed a written contract to appellant, by the terms of which appellant agreed to construct a certain house for appellees, who agreed upon certain con-

tractors to erect the same, and agreed to pay appellant $1000, and sub-scribed for twenty shares of stock in appellant company, of $50 each. Appellees were to pay $7 per month on the shares of stock, and the further sum of $8.35 per month as interest until the maturity of the stock, estimated to mature in about six years. The contract also provided that appellant should hold the mechanic's lien on said building.

After paying eighty-two installments aggregating $1267.30, plaintiffs brought this suit, alleging that the contract executed was a scheme and device to evade the usury law and thereby collect a greater rate of interest than allowed by the laws of Texas. Further, that he borrowed $1000 from appellant at the rate of 5 per cent interest per annum, and that said monthly payments were to be applied on the principal and interest, and not upon the stock, the same being fictitious. They prayed that the sum paid, or so much thereof as necessary, be applied to the extinguishment of the $1000 indebtedness, and that they have judgment for the overplus, to wit, $267.30, and costs. The defendant answered setting forth in substance the terms of the contract, and denying any fraud or scheme to avoid the usury laws. Judgment was rendered for plaintiffs as prayed for.

It is well settled by the authorities of this State that the contract as written was not usurious on its face. This being so, the controlling issue is as to the sufficiency of the evidence to support the verdict and judgment. There was a sharp conflict as to what the real contract was between the parties. Appellee Rawlins testified in his own behalf that that he met Russell, agent of the company, at Ennis, and he was taking subscriptions for the stock in the appellant company and trying to loan money for it; that at the time he was desirious of building a house and wanted to borrow money for that purpose, and had a talk with Russell about making the loan. Russell proposed to loan money at 5 per cent; he wanted him to take a surplus of stock over what was required to borrow on, but he told him he had no money to invest in building and loan stock; that he told Russell that he wanted no stock, and would not give five cents for all the stock; that he simply wanted to borrow money to build a house with; that Russell said so far as the stock was concerned, it was a matter of form with the company; that "I had to take so much stock to borrow so much money; that if I would take stock he, Russell, would guarantee the loan, provided the title to my property was all right, and that I would have to pay only 5 per cent interest. He said the monthly payments to borrow $1000 would be $15.35 per month, and that it would pay out in seventy-two months, $7 per month to be paid on principal and $8.35 on the interest. I was induced to borrow by reason of the representations made by Russell that I could get the money at 5 per cent, and would pay out in seventy-two months. I never had any stock in my possession. The agent brought me something that he called a stock certificate; I never read it, and turned it over to Russell; he said the stock certificate would have to be indorsed

by the company. Mr. Connor, secretary and general manager of the company, was in Ennis probably a day or two before I subscribed for the stock, and I had some talk with him about the loan. Connor figured out on a piece of paper and showed me the amount of money I would have to pay; said there would be $7 to be paid on the principal, reducing the principal $7 each month, and that I would have to pay $8.33 1-3 interest each month of the $1000, and that it would take seventy-two months to mature it. The money was paid to the contractors who built my house."

The witness testified that he had paid, counting $10 membership fee, $1267.30. In a book furnished by the company to Rawlins and identified by him, there appears on the first page the following: "In account with Jno. J B. Rawlins, twenty shares, certificate No. 402;" then follows ruled columns headed "monthly inst. (meaning monthly installments) interest and premium," and by this book it appeared that appellee had made eighty-two stock payments of $7 each, aggregating $574, one interest payment of $6.65, and eighty-one interest payments of $8.35, aggregating $683.30, membership fee $10; total $1267.30. This witness testified that Russell told him that all of each and every monthly installment, so called, of $7 per month would be applied to the loan, and that every time he paid $15.35 his debt to the company would be reduced that much; that he signed the papers simply because Russell told him to do so,

On cross-examination Rawlins testified that he signed a printed application for stock, but did not read it, but that Russell told him that it was an application for twenty shares of stock class A. Russell told me the monthly payments on the shares would be $7. "I was appointed by Russell a member of the local board; I was local treasurer of the company at Ennis in 1892, and have been ever since. My duties were to collect from the members at Ennis and transmit the amounts collected to the home office at Paris, Texas. I also sent in applications for stock for other parties who bought stock for an investment, and not intending to borrow money on same." The witness identified his signature to the several instruments, which will be hereinafter referred to. He said that he had made written application for a loan and swore to it, but did not read it.

Although a written contract as executed does not show on its face to be usurious, it is always proper, when it is attacked for that reason, to show by parol evidence the real contract, in order to determine its usurious character. Association v. Marston, 30 Texas Civ. App., 100, 5 Texas Ct. Rep., 698.

The testimony of Rawlins, though in conflict with the testimony adduced by appellant, was sufficient upon which to base a verdict that the contract executed was but a scheme and device whereby a greater rate of interest could be charged than permitted by law. Walter v. Association, 29 Texas Civ. App., 379, 68 S. W. Rep., 536; Peightal v. Building Co., 25 Texas Civ. App., 390, 61 S. W. Rep., 428; Association v.

Goforth, 57 S. W. Rep., 700; Association v. Thompson, 24 Texas Civ. App., 76, 58 S. W. Rep., 202; Association v. Reily, 50 S. W. Rep., 961.

We have considered all of the assignments of error, but are of the opinion that none are well taken, and deem it unnecessary to further discuss them.    The judgment is affirmed.

*Affirmed.*