### INTERSTATE SAVINGS & TRUST CO. v. HORNSBY et al.

(Court of Civil Appeals of Texas. Texarkana. April 4, 1912. Rehearing Denied May 2, 1912.)

1. USURY (§ 115*)—EVIDENCE—PAROL EVIDENCE.

Where a mortgage or written contract providing for the loan of money on security is not upon its face usurious, parol evidence is admissible to show that it is a mere device adopted to conceal a usurious transaction.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 326; Dec. Dig. § 115.*]

2. PRINCIPAL AND AGENT (§ 116*)—EVIDENCE AS TO AGENT'S AUTHORITY—DECLARATIONS OF AGENT.

Where the general agent and manager of a loan company makes a contract for the company, by which it receives a usurious rate of interest, and the company accepts the benefit of the contract, it is bound by the acts and statements of the general agent, notwithstanding some undisclosed limitation placed upon his authority of which the borrower had no notice.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 377, 377½; Dec. Dig. § 116.*]

3. EVIDENCE (§ 397*)—PAROL EVIDENCE—CONTRACTS.

Parol evidence as to matters reduced to a writing is admissible when not in conflict with the writing itself.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756–1765; Dec. Dig. § 397.*]

4. USURY (§ 117*)—CANCELLATION OF DEED OF TRUST—WEIGHT OF EVIDENCE.

Evidence in a suit to cancel a note and the deed of trust securing the debt on the ground that the interest rate on the debt was usurious *held* sufficient to sustain a verdict for the cancellation of the note and the deed of trust.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 378–390; Dec. Dig. § 117.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Suit by Caroline E. Hornsby and another against the Interstate Savings & Trust Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

W. B. Paddock and Theodore Mack, both of Ft. Worth, for appellant. A. J. Clendenen, of Ft. Worth, for appellees.

HODGES, J. This suit was instituted by the appellees, Caroline E. Hornsby and her son, J. L. Hornsby, against the Interstate Savings & Trust Company, a Colorado corporation, to cancel a deed of trust upon certain real estate in Tarrant county, and to recover double the amount of the sum alleged to have been paid to the appellant as usurious interest upon a debt. The evidence shows that in 1904 the appellant was a corporation existing under the laws of Colorado, that it had its domicile in Denver, of that state, and was engaged in the business of making loans on real estate security. Appellant was represented in Texas by one E. E. Solomon, who had an office in the city of Ft. Worth. Solomon was appellant's general agent and local treasurer in this state, and as such had authority to take applications for loans. In March, 1904, appellees procured a loan from appellant through the agency of Solomon of the sum of $1,500, to be used in the erection of a house on a lot situated in North Ft. Worth. The loan was secured by a deed of trust on the property. At the time of obtaining the loan the appellees executed the following contract: "Ft. Worth, Texas, March 24, 1904. Sixty-six (66) months after date, for value received, we promise to pay to the order of the Interstate Savings and Trust Company, a corporation, at its office in the city of Denver, state of Colorado, the sum of fifteen hundred dollars, with interest thereon amounting to eight hundred and twenty-one $70/100$ dollars ($821.70). We agree to pay said interest in sixty-six monthly installments of $12.45 each, payable on the 25th day of each and every month, commencing with the 25th day of April, 1904, and continuing until the full amount of this note is paid. Interest and principal payable in gold coin of the United States, or its equivalent. [Then follow stipulations not here material, and description of the property.] It is the intent of the parties hereto, and the maker of this note declares the facts to be, that he is a bona fide installment investment certificate holder in said company, and applied for such certificate and makes payments thereon as an investment or method of saving, and in no sense are said certificate payments made on the loan evidenced by this note. It is further understood and expressly agreed, that the monthly installment payments upon said certificate do not, under the terms of this contract, constitute a present payment on the debt evidenced by this note, but to provide for future payment by providing a sinking fund through the means of those monthly installments, so made upon said certificate, which fund is now and shall remain pledged as collateral security for the debt evidenced by this note; but when sixty-six monthly payments as provided for in said certificate shall have been paid upon said certificate, and all of the interest due on this note shall have been paid, then the sum so paid upon said installment investment certificate shall be applied by the borrower and subscriber hereto and such amount shall be accepted by the company as a full satisfaction of the debt evidenced by this note. In consideration of the compensation thus accruing and to be allowed by the company at the end of said sixty-six months for the use of said monthly certificate payments the borrower hereby agrees to carry said loan and to make each and all of the said interest and certificate payments promptly as the same become due from month to month for the full period of sixty-six months. But, if all the terms of the deed of trust securing this note have been complied with and if all the interest due on this note has been paid, all of said loan or any part thereof in multiples of $100 may be paid at any time after seven months from the date hereof. In repaying this loan the installment investment certificate assigned as collateral security thereto shall be applied by the borrower and accepted by the company for this purpose, at its value as given in the table of loan surrender values in the schedule on the back of said certificate. In repaying a portion of this loan a proportionate part of said certificate shall be so applied and so surrendered and accepted, and the monthly payment on the uncanceled balance of said certificate as well as the monthly payment of interest on this note shall thereupon and thereafter be proportionately reduced."

The installment investment certificate referred to in this contract is in part as follows: "Class .B. Amount $7,455.00. No. 7,163. Monthly Payment: $21.30. Installment Investment Certificate. The Interstate Savings & Trust Company. This is to certify that Caroline E. Hornsby of No. Ft. Worth of Tarrant county, of the state of Texas, has agreed to become and is registered as an installment investment certificate holder of the Interstate Savings & Trust Company. In consideration of the premises and in further consideration of the full compliance by her, her heirs, administrators and assigns, with the conditions hereinafter stated in this certificate, which, together with her application, and the statements contained in the same are made a part of this contract. The Interstate Savings & Trust Company agrees to pay to Caroline E. Hornsby, her heirs, administrators or assigns, the sum of seventy-four hundred and fifty-five dollars, at the maturity of this certificate, on the 25th day of March, A. D. 1919; or at any of the cash surrender periods mentioned in the schedule printed on the back hereof, the amount stated in said schedule as payable on this certificate at that period." (Then follow printed conditions and stipulations

146 S.W.—61

that will be referred to in the course of the opinion). On the back of the certificate is what is called a table of "loan surrender values" covering every period from 7 months to 66 months. There is also on the back of the instrument what is termed a schedule, giving a detailed list of the guaranteed cash surrender values of the certificate at stated intervals up to 180 months. The certificate contains, among other stipulations, the following provision: "(1) The holder of the certificate agrees to make a monthly payment of $21.30 on or before the 25th of each month, commencing the 25th day of March, 1904, during the continuance of the contract." There are other provisions, which will be referred to in the course of the opinion.

According to the testimony offered by the appellees, they paid to Solomon regularly on this loan the sum of $33.75 each month till their aggregate payments amounted to the sum of $1,552, and they then refused to pay more. They asked for the cancellation of the mortgage upon the ground that the contract was usurious, and that appellant for that reason is not entitled to collect on this obligation more than the principal of the debt. The jury returned a verdict in favor of the appellees for the cancellation of the note and deed of trust, and judgment was entered accordingly. There was no recovery for any usurious interest as prayed for.

The principal question involved in this appeal is, Was the contract by which this loan was negotiated usurious? According to the testimony of J. L. Hornsby, who seems to have conducted the negotiations and made the contracts relating to the loan with Solomon, the agreement and understanding between him and Solomon was that the loan was to be repaid in monthly installments of $33.75, extending over a period of 66 months; that $12.45 of this sum was to be paid each month as a part of the interest fund, and the remainder, $21.30, was to be applied on the principal of the debt. Both J. L. Hornsby and his mother say they knew nothing about any stipulations concerning an installment investment certificate, and assert that they did not understand that they were taking out one. Some of the printed matter, Hornsby says, was referred to by Solomon as "mere forms."

[1] Appellant objected to the testimony of the appellees concerning their understanding with Solomon relative to the application to be made of the payments of $21.30 upon the ground that it tended to vary by parol the terms of a written instrument evidencing the contract between the parties. The effect of this testimony, and its evident purpose, was to show that the real contract between Hornsby and Solomon was usurious. That such testimony is not subject to the objection made is well settled in this state. Where the written contract is not upon its face usurious, parol evidence is admissible to show that the writing is a mere device resorted to for the purpose of concealing a transaction which the law forbids. Cotton States Building Co. v. Rawlins, 30 Tex. Civ. App. 428, 70 S. W. 786, and cases there cited. If the rule were otherwise, it would always be within the power of either party to a contract prohibited by the policy of the law to invoke one provision of the law to protect him against the consequences of having violated another.

The court instructed the jury that the contract was not on its face usurious, and made the rights of the appellees to a recovery depend upon a finding that there was an agreement with Solomon by which $12.45 of the monthly payments was to be applied to the payment of the interest, and the remainder, $21.30, in discharge of the principal debt. He also instructed the jury that if they found that Caroline E. Hornsby agreed to and did subscribe for an installment investment certificate issued by the appellant for the sum of $7,455, agreeing to pay thereon the sum of $21.30 per month for 180 months subject to the conditions set forth in the certificate introduced in evidence, to find for the appellant.

[2] Appellant complains that the portion of the charge referred to was on the weight of the evidence in assuming that Solomon was authorized by his contract of agency to bind appellant by the parol agreement concerning which the appellees testified. It is true the charge does assume that appellant would be bound by what Solomon did in those negotiations; but Solomon was appellant's general agent and manager in Texas, and the appellees had no notice that there were any limitations upon his authority to make such an agreement. If Solomon made a contract by which appellant received a greater rate of interest than 10 per cent. per annum on its loan to the appellees, and appellant accepted the benefits of that contract, we see no reason why it should not now be held bound by what its agent did. If, in determining whether or not the writings evidencing the contract for the repayment of loans are mere devices to conceal a usurious agreement, the statements and explanations of the general agent who represented the lender are to be excluded because of some undisclosed limitation placed upon his authority, then usurers who act through agents could easily ply their vocation without fear of detection.

[3] But there is another reason why we think this charge was not objectionable, and that the testimony concerning Solomon's declarations as to the application to be made of the $21.30 to be paid monthly was admissible, and that is because the statements attributed to Solomon are not in conflict with the writings themselves.

[4] When closely examined and considered together, those instruments disclose the same

purpose in the appropriation of the payments made upon the loan. It will be noticed that the monthly installments of $12.45 are but a small fraction (five cents per month) less than 10 per cent. per annum on the entire principal sum loaned. Of those interest payments there was to be no reduction as the obligation approached maturity, notwithstanding the monthly payments of $21.30 otherwise provided for. To evade the taint of usury by collecting the principal sum in contemporaneous installments of $21.30 per month without reducing the interest payments it is stipulated in the written contract that the latter payments are to be used in the purchase of an installment investment certificate, and this was to create a sinking fund for the final extinction of the debt at maturity. There is a clause in the contract which provides that it is expressly agreed that the monthly installment payments upon the certificate do not constitute present payments on the debt evidenced by the note, but to provide a sinking fund which is to remain pledged as collateral security for the debt evidenced by this note; but when 66 monthly payments, as provided for, have been paid, then the sum so paid upon said installment investment certificate shall be applied by the borrower and subscriber, and shall be accepted by the company as a full satisfaction of the debt evidenced by the note. There is also a provision to this effect: "But, if all the terms of the deed of trust securing this note have been complied with and if all the interest due on this note has been paid, all of said loan or any part thereof in multiples of $100 may be paid at any time after seven months from the date hereof." In connection with that provision, there is a stipulation that requires the cancellation and surrender of the certificate according to the surrender value as shown by the table printed on the back. This table shows that the loan surrender value of this certificate is not equal to the sum actually paid in till after the payment of 56 installments. From that date it begins to increase and accumulate a small excess, and at maturity the loan surrender value is about 6½ per cent. in excess of the aggregate payments, representing an accumulated premium on the $1,500 in 5½ years of $93.20. It is true the back of the certificate contains a provision to this effect: That, if the owner of the installment investment certificate should desire to repay his loan at the end of 66 months with other means than the certificate money which had been provided for as an investment, he should have the privilege of doing so by actually repaying the full sum due on his note and by continuing to make the same monthly certificate payments as previously provided for until the end of any further surrender period as printed on the back of the certificate, and he should then receive the surrender value of the certificate "in accordance with and subject to the terms

and conditions governing the certificate as the same appears on its face." But subdivision 5, which appears on the face of the certificate, contains the following stipulation: "The terms and conditions of this contract shall not debar the directors of the company from the power to terminate this contract at any time, should they consider it to the best interests of the certificate holders or the company so to do. In such case the amount of increment payable to the certificate holder shall be based upon a rate no greater than the rate of increment at the surrender period last past." It is thus made to appear that at the maturity of the debt the borrower is compelled to allow this fund to be applied on his debt, and permit the cancellation of his certificate. It also appears that this certificate at the end of 5½ years has earned a premium of about 6½ per cent. The probability that a borrower who is compelled to pay approximately 10 per cent. per annum for the loan of money would voluntarily seek an investment for his sinking fund in a security that would only accumulate a premium of 6½ per cent. in 5½ years is too remote to relieve the transaction from suspicion.

The contract in this case is wholly unlike that referred to in the case of Interstate Building & Loan Ass'n v. Goforth, 94 Tex. 259, 59 S. W. 871. In that case the contract which the Supreme Court held was not upon its face usurious, but might be shown to be so by parol testimony, provided that the borrower as a condition upon which he should receive the loan should subscribe for a certain number of shares of stock the par value of which was to be equal to the amount of the loan. A 6 per cent. premium was guaranteed upon the money paid on this stock in monthly installments covering a period of 96 months. It was also stated in the opinion that the owner of the stock had the privilege of participating in the uncertain profits which the business might earn. Here there is no purchase of any stock or interest in any business giving an opportunity to share in an uncertain profit resulting therefrom. The fixed premium aggregates on an average of 2⅛ per cent. per annum on the money paid on the different installments up to the maturity of the loan. This is so small as to negative the inference of a bona fide voluntary investment. The compulsory accumulation of payments which are to be ultimately applied on the debt, while called payments upon the installment investment certificate, are no more than monthly payments on the principal of the debt. The real transaction would not be misdescribed if the appellant, instead of issuing this formal certificate, had issued monthly receipts acknowledging the payments of $21.30 to be applied at the end of 66 months in the extinguishment of the debt. The real character of a transaction is not to be determined by the name which may

be given to the writing in which it is expressed, but by the nature and purpose of the transaction itself.

We think there was no error in the trial below of which the appellant can here complain, and the judgment is affirmed.